UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD WILSON,<br>CDCR #B-93800,<br><br>                         Plaintiff,<br><br>    vs.<br><br>A. CUEVAS; M. MOYA; J. OLIVO;<br>M.A. MENDOZA,<br>                         Defendants. | Case No.: 3:16-cv-2100-BTM-DHB<br><br>**ORDER:**<br><br>**1) GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT FOR FAILURE TO EXHAUST PURSUANT TO 42 U.S.C. § 1997e(a)**<br>**[ECF No. 21]; AND**<br><br>**2) DENYING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**<br>**[ECF No. 20]** |

    Gerald Wilson ("Plaintiff") is currently incarcerated at Kern Valley State Prison, and is proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983.

    On March 3, 2017, the Court screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, and directed U.S. Marshal service pursuant to 28 U.S.C. § 1915(d) and FED. R. CIV. P. 4(c)(3) as to the named Defendants, all of whom are

alleged to have violated Plaintiff's First and Eighth Amendment rights while Plaintiff was incarcerated at Calipatria State Prison ("CSP") in January of 2016. *See* ECF No. 8.[1]

On June 12, 2017, Defendants Cuevas, Olivo, and Mendoza[2] filed a Motion to Dismiss Plaintiff's Eighth Amendment excessive force claims and First Amendment retaliation claims pursuant to FRCP 12(b)(6). (ECF No. 20.) On July 19, 2017, Defendants Cuevas, Olivo, and Mendoza filed a motion seeking summary judgment as to Plaintiff's Eighth Amendment deliberate indifference claims on grounds that he failed to exhaust his administrative remedies before filing suit pursuant to 42 U.S.C. § 1997e(a) (ECF No. 21). The Court has notified Plaintiff of the requirements for opposing summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), and *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc) (ECF No. 22).

Plaintiff has filed an Opposition to Defendants' Motion for Partial Summary Judgment but he has not filed an Opposition to Defendants' Motion for Partial Dismissal of his Complaint (ECF No. 27.)

I.  **Plaintiff's Allegations**

Plaintiff was housed at CSP on January 27, 2016. (*See* Compl. at 12.) At noon on that day, Plaintiff claims he went to the "Facility 'C' program office" to inquire "about a young Black inmate" that an officer had taken to the program officer earlier that day. (*Id.* at 13.) Plaintiff alleges Defendant Cuevas told Plaintiff that it was "none of [Plaintiff's] business" and he should leave the office. (*Id.*) As Plaintiff began to leave, he claims Cuevas stated "that [Plaintiff] walks around here as if [Plaintiff] owns the place." (*Id.*) Plaintiff alleges he said to Cuevas "why the disrespect?." (*Id.*) Cuevas responded by stating "you are nothing but a snitch and an s-building telling [expletive]." (*Id.*) He

---

[1] Page numbers for all documents filed in the Court's Case Management/Electronic Case File ("CM/ECF") will refer to the pagination generated by CM/ECF as indicated on the top right-hand corner of each chronologically-numbered docket entry.

[2] Defendant Moya has not been served in this action. (ECF Nos. 11, 15)

further claims Cuevas stated that Plaintiff "only writes officers up." (*Id.*) Plaintiff responded with an expletive and Cuevas allegedly asked Plaintiff "what was [he] going to do about it?" (*Id.*)

Plaintiff alleges that this verbal exchange was witnessed by "both staff and inmates," including a sergeant who handcuffed Plaintiff. (*Id.*) Plaintiff was taken to a holding cell inside the program office. (*See id.*) While Plaintiff was in the holding cell, a sergeant and lieutenant came to question him about the incident. (*See id.* at 13-14.) Plaintiff claims he was told that they "would talk to Officer Cuevas about his conduct." (*Id.* at 14.) Plaintiff was released back to his housing unit. (*Id.*)

Later that evening, Plaintiff was leaving the "chow hall" when he saw Cuevas. (*Id.*) Plaintiff asked Cuevas why he called Plaintiff a "snitch" earlier that day. (*Id.*) Plaintiff alleges Cuevas responded "because I can" and asked Plaintiff "are you getting up on me?" Plaintiff claims Cuevas then kicked his right ankle causing Plaintiff "to lose [his] cane and balance." (*Id.*) Plaintiff fell backward and "swung both of [his] arms out trying to grab Cuevas" so he would not fall on his back. (*Id.*) However, he claims that Defendant Olivo grabbed his arms and kicked both of his legs "away from [Plaintiff]," which caused Plaintiff to fall on his back "on the asphalt knocking the wind" out of him. (*Id.*) Plaintiff claims he could not move after falling on the ground. (*See id.*) Plaintiff was turned over onto his stomach by correctional officers and claims Cuevas placed his knee on Plaintiff's "left side" and back. (*Id.*) Plaintiff alleges Defendant Moya "came over" and used his baton to "jab" Plaintiff in his left side "for no reason." (*Id.* at 14-15.)

Cuevas continued to place his knee on Plaintiff's back and purposefully bent Plaintiff's "left fingers back." (*Id.* at 15.) At the same time, he claims Cuevas was "yelling out loud stop resisting" to have "justification for trying to break [Plaintiff's] fingers." (*Id.*) Defendant Mendoza was instructed by Moya to escort Plaintiff to the "Facility 'C' Program Office." (*Id.*) As he was pulled up from the ground, Plaintiff asked Mendoza for his cane because he was in pain. (*See id.*) However, Plaintiff alleges Mendoza ignored his request. (*Id.*)

1       Plaintiff informed the sergeant in administrative segregation ("ad-seg") that he had been subjected to excessive force and "therefore, a video was made." (*Id.*) Plaintiff also filed an inmate grievance. (*Id.*)

      Plaintiff was engaged in litigation "against institutional head of [CSP]" for violating his First Amendment rights for "redress petition of grievance against prison officials" in the Eastern District of California in November of 2015. (*Id.* at 16.) Plaintiff alleges that the actions of Cuevas in January of 2016 were in retaliation for Plaintiff filing the previous lawsuit in 2015. (*See id.*)

      Plaintiff seeks various forms of injunctive relief as well as compensatory and punitive damages. (*Id.* at 19-20.)

## II. Unserved Defendant

      Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *See Crowley v. Bannister*, 734 F.3d 967, 976 (9th Cir. 2013).

      A review of the Court's docket indicates that Plaintiff has failed to properly serve Defendant M. Moya. *See Walker v. Sumner*, 14 F.3d 1415, 1421-22 (9th Cir. 1994) (where a pro se plaintiff fails to provide the Marshal with sufficient information to effect service, the court's sua sponte dismissal of those unserved defendants is appropriate under FED. R. CIV. P. 4(m)). Although an incarcerated pro se plaintiff proceeding IFP is entitled to rely on the United States Marshal for service of the summons and complaint, he must provide the Marshal with the information necessary to effectuate that service. *See Puett v. Blandford*, 912 F.2d 270, 273 (9th Cir. 1990). Reliance on the U.S. Marshal does not mean that a plaintiff can "remain silent and do nothing to help effectuate service." *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987); *Puett*, 912 F.3d at 274-75.

///

///

1    In this case, Plaintiff has had notice of his failures to effectuate service upon
Defendant M. Moya but has not taken any further steps to serve this Defendant. (*See* ECF Nos. 11, 15.) Therefore, the Court will issue an Order to Show Cause why Defendant Moya should not be dismissed from this action pursuant to FED. R. CIV. P. 4(m).

## IV. Defendants' Partial Motion for Summary Judgment

Defendants Cuevas, Mendoza, and Olivo seek partial summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a) before filing suit as to his Eighth Amendment deliberate indifference to serious medical need claim. (*See* Defs.' P&As in Supp. of Summ. J. (ECF No. 21 at 1.))

### A. <u>Legal Standards for Exhausting Administrative Remedies</u>

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA[.]" *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Jones*, 549 U.S. at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Therefore, regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as that process remains available to him. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies ... available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935

(9th Cir. 2005) (original emphasis) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862; *see also Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable.").

Grievance procedures are available if they are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738); *see also Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'") (quoting *Albino*, 747 F.3d at 1171).

In *Ross*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is *not* capable of use to obtain relief." 136 S. Ct. at 1859 (emphasis added). These circumstances arise when: (1) the "administrative procedure ... operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use ... so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60 (citations omitted).

Applying these principles, the Ninth Circuit has specifically found that "[w]hen prison officials fail to respond to a prisoner's grievance within a reasonable time, the prisoner is deemed to have exhausted available administrative remedies within the meaning of the PLRA." *See Andres v. Marshall*, 854 F.3d 1103, 1105 (9th Cir. 2017) (per curiam) (finding RJD's 6-month failure to respond to an inmate grievance rendered prisoner's administrative remedies unavailable); *accord Dole v. Chandler*, 438 F.3d 804, 809, 811 (7th Cir. 2006) (officials' failure to respond to a "timely complaint that was never received" rendered prisoner's administrative remedies unavailable). The Ninth

3:16-cv-2100-BTM-DHB

Circuit has further found administrative remedies "plainly unavailable" where prison officials "screen out an inmate's appeals for improper reasons," *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), and "effectively unavailable" where they provide the inmate mistaken instructions as to the means of correcting a claimed deficiency, but upon re-submission, reject it as untimely after compliance proved impossible. *See Nunez*, 591 F.3d at 1226. Administrative remedies may also prove unavailable if the prisoner shows an "objectively reasonable" basis for his belief that "officials would retaliate against him if he filed a grievance." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).

Because the failure to exhaust is an affirmative defense, Defendants bear the burden of raising it and proving its absence. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1169 (noting that Defendants must "present probative evidence—in the words of *Jones*, to 'plead and prove'–that the prisoner has failed to exhaust available administrative remedies under § 1997e(a)"). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, Defendants must produce evidence proving the Plaintiff's failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable Plaintiff, shows he failed to exhaust. *Id.*

### B. Legal Standards for Summary Judgment

Summary judgment is generally proper if the movant shows there is no genuine dispute as to any material fact and he or she is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether a fact is disputed or undisputed, must be supported by: (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1) (quotation marks omitted). The

Court may consider other materials in the record not cited to by the parties, although it is not required to do so. FED. R. CIV. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

When Defendants seek summary judgment based on the Plaintiff's failure to exhaust specifically, they must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). If they do, the burden of production then shifts to the Plaintiff "to show that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191.

Only "[i]f the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, [is] a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166.

Finally, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). District courts must also "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

### C. CDCR's Exhaustion Requirements

With respect to their initial burden on summary judgment, the Court finds Defendants have offered sufficient evidence, which Plaintiff does not contradict, to prove that the California Department of Corrections and Rehabilitation (CDCR) has established an "administrative remedy" for prisoners like Plaintiff to pursue before filing suit under § 1983. *See Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).

///

Specifically, a California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a material adverse effect upon his ... health, safety, or welfare." CAL CODE REGS., tit. 15 § 3084.1(a). Since January 28, 2011, and during the times alleged in Plaintiff's Complaint, Title 15 of the California Code of Regulations requires three formal levels of appeal review. *See* Self Decl. (ECF No. 92-3) ¶ 2. Thus, in order to properly exhaust, a California prisoner must, within 30 calendar days of the decision or action being appealed, or "upon first having knowledge of the action or decision being appealed," CAL. CODE REGS., tit. 15 § 3084.8(b), "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested." *Id.* § 3084.2(a). The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution." *Id.* § 3084.2(c), § 3084.7(a). If the first level CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," *id.* § 3084.7(b), the prisoner must "within 30 calendar days ... upon receiving [the] unsatisfactory departmental response," *id.* § 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." *Id.* § 3084.7(b), (d)(2). "The third level is for review of appeals not resolved at the second level." *Id.* § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies," *id.* § 3084.7(d)(3), "unless otherwise stated." *Id.* § 3084.1(b); *see also* CDCR OPERATIONS MANUAL § 541100.13 ("Because the appeal process provides for a systematic review of inmate and parolee grievances and is intended to afford a remedy at each level of review, administrative remedies shall not be considered exhausted until each required level of review has been completed.").

/ / /

### D. Eighth Amendment Deliberate Indifference claim

Plaintiff alleges in his Complaint that Defendants denied him the use of his cane following the alleged incident which constitutes deliberate indifference of a serious medical need. Defendants argue that Plaintiff never submitted a grievance as to this claim.

In support, Defendants proffer the sworn declaration of M. Voong, Chief of the CDCR Office of Appeals, ECF No. 21-3, attached to which is a copy of a Third Level Appeals received from Plaintiff relating to the facts alleged in the. (*Id.* at 6, Ex. A.)

Defendants also offer the sworn Declaration of M. Pollard, the Acting Chief Deputy Warden. (*See* ECF No. 21-2.) Attached to Pollard's Declaration are copies all grievances and appeals received from Plaintiff and recorded by the CDCR's Inmate/Parolee Appeals Tracking System ("IATS"). (*Id.* at 5, Ex. A.) Pollard declares that none of the grievances filed by Plaintiff relate to the deliberate indifference claim and therefore, this claim was not properly exhausted through the third or "Director's Level" of review in Sacramento. (*Id.* at 3-6 ¶ 8.)

Both parties agree that Plaintiff filed a grievance relating to, at the very least, some of the claims Plaintiff has brought in this action.

This appeal is designated as follows:

CDCR 602 Log. No. CAL-16-00163

In this appeal, Plaintiff claims that Cuevas approached him on January 27, 2016 and describes the confrontation that occurred between Plaintiff and Cuevas using virtually the same set of facts he sets forth in his Complaint. (*See* Voong Decl., Ex. A at 8-11; Pl.'s Opp'n at 24-25.) In this grievance, Plaintiff claims that Cuevas kicked him in the "right ankle" causing Plaintiff "to lose [his] balance" and he was also kicked by "other staff members." (*Id.*) Plaintiff requested that "the excessive use of force by C/O A. Cuevas and other staff members on a disabled inmate with a cane be investigated." (*Id.*) Plaintiff also requested to be "compensated for my injuries" and to be transferred. (*Id.*)

Plaintiff's grievance was accepted for review at the Second Level. (*See* Voong Decl., Ex. A at 12-13.) Chief Deputy Warden Hedrick "partially granted" Plaintiff's request and "referred" the matter to the "Office of Internal Affairs for follow-up and possible investigation." (*Id.* at 12.) Plaintiff submitted his grievance to the Third Level. On June 6, 2016, Appeals Examiner Briggs and Voong issued a "Third Level Appeal Decision." (Voong Decl., Ex. A. at 6-7; Pl.'s Opp'n at 26-27.) In this decision, Plaintiff's appeal was denied. It was determined that "appellant's allegation was appropriately reviewed and evaluated by administrative staff." (*Id.*)

Defendants argue that all records were searched and there is no record of a grievance filed by Plaintiff "alleging that Defendants were deliberately-indifferent to his needs by ignoring his request for his cane during an incident that occurred on January 27, 2016." (Defs.' P&As in Supp. of Summ. J. (ECF No. 21-1 at 6.)) In his Opposition, Plaintiff argues that "California regulations require only that an inmate describe the "'problem' and 'action requested.'" (Pl.'s Opp'n at 12.) Plaitniff claims that because he was "walking with a cane at the time" of the alleged use of excessive force, the facts are sufficient to put prison officials "on notice" that he was alleging an Eighth Amendment deliberate indifference to a serious medical need. (*Id.* at 11.)

The Ninth Circuit has held that "a grievance suffices it if alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio,* 557 F.3d 1117, 1120 (9th Cir. 2009) (citations omitted.) The Ninth Circuit has also held that the "grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016), quoting *Jones*, 549 U.S. at 219.

Plaintiff argues that he indicated in his grievance that he was "walking with a cane at the time of the incident." (Pl.'s Opp'n at 11.) Therefore, according to Plaintiff "the fact the risk was obvious, may be sufficient to establish a prison official's deliberate indifference." (*Id.*, citing *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015)). The case Plaintiff cites, *Cortez*, involves the summary judgment of an Eighth Amendment claim on

the merits of the claim itself. The case before this Court involves whether Plaintiff properly exhausted his Eighth Amendment claim, a procedural hurdle before the Court can consider the merits of the underlying claim.

Plaintiff further argues that the holding in *Griffin* supports his claim that he properly exhausted his Eighth Amendment deliberate indifference claim. (*See* Pl.'s Opp'n at 14-15.) Specifically, Plaintiff argues that *Griffin* holds that the "grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved." (*Id.*, citing *Griffin*, 557 F.3d at 1120.) *Griffin* also states that a "grievance also need not contain every fact necessary to prove each element of an eventual legal claim." (*Id.*)

In the case before this Court, Plaintiff argues that he was subjected to excessive force but he does not allege that he was ever denied medical treatment following the alleged incident in his grievance. There are no facts alleged that would alert prison officials to the nature of his injuries or that any prison official failed to treat those injuries.

The excessive force claims and medical deliberate indifference claims are two separate claims that would require separate individual inquiries by prison officials and rely on a different set of facts for each claim. The fact that Plaintiff indicated he uses a cane in his grievance does not place any prison official on notice that he was ever denied the use of his cane. Moreover, he does not identify any specific injury that he suffered as a result of the alleged excessive force incident or that he was denied any medical treatment for any specific injury. Thus, the Court finds that Plaintiff did not exhaust his administrative remedies as to his Eighth Amendment deliberate indifference to serious medical claim and GRANTS Defendants' Motion for Partial Summary Judgment.

/ / /

/ / /

/ / /

/ / /

## IV. Motion to Dismiss

### A. Defendants' Arguments

Defendants request dismissal of Plaintiff's Eighth Amendment excessive force and First Amendment retaliation claims on the ground that these claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* Defs.' Mem. of P&As in Supp. of Mot. to Dismiss, ECF No. 20-1 at 4.)

### B. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [typically] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cty.*, 865 F.3d 1224 (9th Cir. 2017). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

/ / /

Therefore, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotes omitted); *accord Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc).

Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995), "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) (citation omitted); *Somers*, 729 F.3d at 960.

### C. First and Eighth Amendment claims

Defendants argue that both Plaintiff's excessive force claims and his retaliation claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). As an initial matter, Defendants request that due to Plaintiff attaching a copy of his Rules Violation Report ("RVR") charging him with battery on a peace officer to his Complaint, the Court should also consider the "separate document reporting the disciplinary hearing and decision on the charge." (*See* Defs.' Mem. of P&As in Supp. of Mot. to Dismiss, ECF No. 20-1 at 3.) Defendants have attached this document to their Motion as "Exhibit A." (*Id.* at 9-11.) The Court will liberally construe this as a request for judicial notice. Federal Rules of Evidence 201 provides, in part, that the Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2). The Court will grant this request as Plaintiff has not filed an objection.

This document provided by Defendants indicates that Plaintiff was found guilty of battery on a peace officer following the incident described in his Complaint. (*See* Defs. Defs.' Mem. of P&As in Supp. of Mot. to Dismiss, ECF No. 20-1 at 11.) Plaintiff was sanctioned "one hundred and fifty (150) days of forfeiture of credit" and was "counseled and reprimanded." (*Id.*)

In *Heck,* the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id*. at 486-87.

"Suits challenging the validity of the prisoner's continued incarceration lie within 'the heart of habeas corpus,' whereas 'a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody.'" *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003), *quoting Preiser v. Rodriguez*, 411 U.S. 475, 489-99 (1973) (holding that a writ of habeas corpus is "explicitly and historically designed" to provide a state prisoner with the "exclusive" means to "attack the validity of his confinement" in federal court).

Defendants argue that if the Court were to find in favor of Plaintiff on either the excessive force claim or the retaliation claim, it would "be at odds" with the finding that the use of force by Defendants was "an attempt to control Plaintiff's violent resistance" and Plaintiff's action "necessitated their use of force." (Defs. Defs.' Mem. of P&As in Supp. of Mot. to Dismiss, ECF No. 20-1 at 5.)

Defendants cite to several Ninth Circuit opinions finding that *Heck* bars a § 1983 action involving a claim of excessive force under the Fourth Amendment during an arrest. However, the Defendants do not cite to the more recent Ninth Circuit opinion in which the Ninth Circuit held that a conviction of resisting arrest under the California penal code "does not bar a § 1983 case for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous

transaction.'" *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (citations omitted.)

The Ninth Circuit has also held that "a § 1983 action is not barred under *Heck* unless it is clear from the record that its successful prosecution would *necessarily* imply or demonstrate that the plaintiff's earlier conviction was invalid." *Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2006) (en banc). Here, if Plaintiff were to prevail in this action, it is not at all clear that it would invalidate his conviction of battery on a peace officer. Even if Plaintiff did commit a battery, that does not exclude the possibility that the force used in response to this battery was excessive.

Moreover, Defendants supply no legal authority to support their argument that a retaliation claim is barred by *Heck*. Defendants do not set forth any facts to show how Plaintiff's battery conviction would be invalidated if he were to prevail on his retaliation claims. The Court cannot determine how Plaintiff's § 1983 claims would be barred by *Heck* because it is not "clear from the record that its successful prosecution would *necessarily*" imply the invalidity of Plaintiff's battery conviction. *Smith,* 394 F.3d at 699.

Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claims and Eighth Amendment excessive force claims as barred by *Heck* is DENIED.

## V. Conclusion and Order

Accordingly, the Court:

1) Issues an **ORDER TO SHOW CAUSE** no later than thirty (30) days from the date this Order is filed why the claims against Defendant Moya should not be dismissed for want of prosecution pursuant to Fed.R.Civ.P. 4(m). If Plaintiff fails to provide the Court with documentation demonstrating proper service on Defendant Moya within thirty (30) days from the date this Order is filed, the claims against Defendant Moya in this action will be dismissed without prejudice.

2) **GRANTS** Defendants' Motion for Partial Summary Judgment pursuant to 42 U.S.C. § 1997e(a) and **DISMISSES** Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim (ECF No. 21);

3) **DENIES** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment excessive force claim and First Amendment retaliation claims pursuant to Fed.R.Civ.P. 12(b)(6) (ECF No. 20);

4) **ORDERS** Defendants to file an Answer to the remaining claims in Plaintiff's Complaint (ECF No. 1) within 30 days of this Order pursuant to Fed.R.Civ.P. 12(a)(4)(A).

**IT IS SO ORDERED**.

Dated: January 16, 2018

HON. BARRY TED. MOSKOWITZ,
Chief Judge, U.S. District Court