UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD WILSON,<br>CDCR #B-93800,<br><br>                                    Plaintiff,<br><br>vs.<br><br>A. CUEVAS; M. MOYA;<br>J. OLIVO; M.A. MENDOZA,<br><br>                                    Defendants. | Case No.:  3:16-cv-2100-BTM-MSB<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO Fed. R. Civ. P. 56; AND**<br><br>**(2)  ISSUING ORDER TO SHOW CAUSE WHY CLAIMS AGAINST MOYA SHOULD NOT BE DISMISSED PURSUANT TO FRCP 4(m)**<br><br>**[ECF No. 62]** |

Currently before the Court is a Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56 by Defendants Cuevas, Olivo, and Mendoza (ECF No. 62). After he was notified of the requirements for opposing summary pursuant to *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (ECF No. 64), and granted extensions of time (ECF Nos. 79, 92), Plaintiff filed his Opposition ("Opp'n") (ECF No. 95).

1

For the reasons explained, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment (ECF No. 62). The Court also issues an order to show cause no later than thirty (30) days from the date this Order is filed why the claims against Defendant Moya should not be dismissed for want of prosecution pursuant to Fed.R.Civ.P. 4(m).

## I. Procedural Background

On August 17, 2016, Plaintiff filed a Complaint ("Compl.") pursuant to 42 U.S.C. 1983 alleging that Correctional Officers at Calipatria State Prison ("CAL") violated his First and Eighth Amendment rights when he was housed there in 2016. On March 3, 2017, the Court granted Plaintiff leave to proceed in forma pauperis, screened his Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, and directed the U.S. Marshal to effect service on his behalf. (*See* ECF No. 8.)

On June 2, 2017, Defendants brought a Motion to Dismiss Plaintiff's Complaint. (*See* ECF No. 20.) They later filed a Motion for Partial Summary Judgment on July 19, 2017. (*See* ECF No. 21.) On January 16, 2018, the Court granted Defendants' Motion for Partial Summary Judgment and found that Plaintiff had failed to properly exhaust his administrative remedies as to his Eighth Amendment inadequate medical care claim as required by 42 U.S.C. § 1997e. (*See* ECF No. 29.) However, the Court denied Defendants' Motion to Dismiss Plaintiff's Complaint for failing to state a claim as to Plaintiff's First Amendment retaliation claim and Eighth Amendment excessive force claim. (*Id.*) Defendants filed their Answer to Plaintiff's Complaint on February 14, 2018. (*See* ECF No. 31.) Defendants have now filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. (*See* ECF No. 62.)

## II. Plaintiff's Claims

Plaintiff was housed at CAL on January 27, 2016. (*See* Compl. at 12.) At noon on that day, Plaintiff claims he went to the "Facility 'C' program office" to inquire "about a young Black inmate" that an officer had taken to the program officer earlier that day. (*Id.* at 13.) Plaintiff alleges Defendant Cuevas told Plaintiff that it was "none of [Plaintiff's]

2

business" and he should leave the office. (*Id.*) As Plaintiff began to leave, he claims Cuevas stated "that [Plaintiff] walks around here as if [Plaintiff] owns the place." (*Id.*) Plaintiff alleges he said to Cuevas "why the disrespect?" (*Id.*) Cuevas responded by stating "you are nothing but a snitch and an s-building telling [expletive]." (*Id.*) He further claims Cuevas stated that Plaintiff "only writes officers up." (*Id.*) Plaintiff responded with an expletive and Cuevas allegedly asked Plaintiff "what was [he] going to do about it?" (*Id.*)

Plaintiff alleges that this verbal exchange was witnessed by "both staff and inmates," including a sergeant who handcuffed Plaintiff. (*Id.*) Plaintiff was taken to a holding cell inside the program office. (*See id.*) While Plaintiff was in the holding cell, a sergeant and lieutenant came to question him about the incident. (*See id.* at 13-14.) Plaintiff claims he was told that they "would talk to Officer Cuevas about his conduct." (*Id.* at 14.) Plaintiff was released back to his housing unit. (*Id.*)

Later that evening, Plaintiff was leaving the "chow hall" when he saw Cuevas. (*Id.*) Plaintiff asked Cuevas why he called Plaintiff a "snitch" earlier that day. (*Id.*) Plaintiff alleges Cuevas responded, "because I can" and asked Plaintiff "are you getting up on me?" Plaintiff claims Cuevas then kicked his right ankle causing Plaintiff "to lose [his] cane and balance." (*Id.*) Plaintiff fell backward and "swung both of [his] arms out trying to grab Cuevas" so he would not fall on his back. (*Id.*) However, he claims that Defendant Olivo grabbed his arms and kicked both of his legs "away from [Plaintiff]," which caused Plaintiff to fall on his back onto "the asphalt knocking the wind" out of him. (*Id.*) Plaintiff claims he could not move after falling on the ground. (*See id.*) Plaintiff was turned over onto his stomach by correctional officers and Cuevas placed his knee on Plaintiff's "left side" and back. (*Id.*) Plaintiff alleges Defendant Moya "came over" and used his baton to "jab" Plaintiff in his left side "for no reason." (*Id.* at 14-15.)

Cuevas continued to place his knee on Plaintiff's back and purposefully bent Plaintiff's "left fingers back." (*Id.* at 15.) At the same time, he claims Cuevas was "yelling out loud stop resisting" to have "justification for trying to break [Plaintiff's]

fingers." (*Id.*) Defendant Mendoza was instructed by Moya to escort Plaintiff to the "Facility 'C' Program Office." (*Id.*) As he was pulled up from the ground, Plaintiff asked Mendoza for his cane because he was in pain. (*See id.*) However, Mendoza ignored his request. (*Id.*)

Plaintiff informed the sergeant in administrative segregation ("ad-seg") that he had been subjected to excessive force and "therefore, a video was made." (*Id.*) Plaintiff also filed an inmate grievance. (*Id.*)

Plaintiff was engaged in litigation "against institutional head of [CSP]" for violating his First Amendment rights for "redress petition of grievance against prison officials" in the Eastern District of California in November of 2015. (*Id.* at 16.) Plaintiff alleges that the actions of Cuevas in January of 2016 were in retaliation for Plaintiff filing the previous lawsuit in 2015. (*See id.*)

Plaintiff seeks various forms of injunctive relief as well as compensatory and punitive damages. (*Id.* at 19-20.)

## III. Defendant's Claims

Correctional Officers Cuevas, Olivo, and Mendoza "were all working on Facility C, performing their usual duties outside the dining hall on the evening of January 27, 2016." (*See* Defs.' P&As in Supp. of Mot. for Summ. J., ECF No. 62-1 [hereafter "Defs.' P&As] at 7.) Cuevas was "approached" by Plaintiff who "began to mumble words that Cuevas was not able to hear." (*Id.*) In response, Cuevas "leaned forward to try and hear Plaintiff, but still could not understand him." (*Id.*) Cuevas told Plaintiff to "keep moving towards his housing unit" but Plaintiff "ignored Cuevas, refused to move, and continued to mumble." (*Id.* at 7-8.) Instead, Plaintiff "suddenly" hit Cuevas "in the face, hitting Cuevas on his lower lip and jaw." (*Id.* at 8.)

Defendant Olivo "grabbed Plaintiff with both hands" and took him "to the ground by sweeping Plaintiff's right leg with Olivo's left leg. (*Id.*) Plaintiff "swung both fists" at Olivo and "Cuevas then assisted Olivo in gaining control of Plaintiff." (*Id.*) While Plaintiff was on the ground he was "being combative and resisting Olivo's orders to

comply by moving his arms around and kicking." (*Id.*)

Cuevas attempted to control Plaintiff by "plac[ing] his right knee over Plaintiff's torso" as Plaintiff "posed a threat to Olivo." (*Id.*) Cueveas then "went into a mount position by placing both of his legs over Plaintiff's lower back once Olivo and Cuevas were able to gain some compliance from Plaintiff." (*Id.*)

Cuevas then "grabbed Plaintiff's left wrist and Olivo had control of Plaintiff's left hand." (*Id.*) Cuevas then "released Plaintiff's left wrist and took control of Plaintiff's right hand and pulled it towards the middle of Plaintiff's lower back." (*Id.*) Plaintiff's wrists were "placed" in "restraints" by Cuevas. (*Id.*)

After Plaintiff was restrained, Cuevas "walked away" as Defendant Mendoza "took custody of Plaintiff and escorted him to the Facility 'C' Program Office." (*Id.*) Cuevas "reported to the prison's medical clinic for medical attention" as he "sustained serious injuries from this incident." (*Id.*) Specifically, Cuevas's "right pinky finger was dislocated, he suffered a mild concussion, and he tore his right hip labrum" which required surgery to repair. (*Id.* at 8-9.) Cuevas had surgery "for a tear to his right hip labrum in April, 2014." (*Id.*) Cuevas indicates that he "did not kick Plaintiff's cane out from under him because that was physically impossible." (*Id.*) Following the incident with Plaintiff, Cuevas "was unable to return to work" at CAL and "went on worker's compensation" until he was "rehired by the CDCR at Richard J. Donovan Correctional Facility in April 2018." (*Id.*)

Plaintiff was later "criminally charged with battery by a prisoner on a non-prisoner under California Penal Code section 4501.5. (*Id.* at 10.) Plaintiff was "found guilty" in Imperial County Superior Court on July 20, 2018. (*Id.*) Plaintiff was given a "three-year sentence." (*Id.*) At trial, both Cuevas and Olivo testified that "Plaintiff punched Cuevas in the face." (*Id.*) Plaintiff "admitted at this trial that he struggled and resisted Cuevas and Olivo when Plaintiff was on the ground because he was 'trying to defend'" himself. (*Id.*)

/ / /

5

## IV.    Defendant's Motion for Summary Judgment

### A.    Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

As the moving parties, Defendants "initially bears the burden of proving the absence of a genuine issue of material fact." *Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). While Plaintiff bears the burden of proof at trial, Defendants "need only prove that there is an absence of evidence to support [Plaintiff's] case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment ... is satisfied." *Id.* at 323.

If Defendants meet their initial responsibility, the burden then shifts to Plaintiff to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. In attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the allegations or denials of his pleadings, but is instead required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, to support his contention that the dispute exists. *See* Fed.

R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. "A [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

Plaintiff must also demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of his suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for him. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

Finally, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and ... avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, if Plaintiff "fails to properly support an assertion of fact or fails to properly address [Defendants'] assertion of fact, as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ...." Fed. R. Civ. P. 56(e)(2). Nor may the Court permit Plaintiff, as the opposing party, to rest solely on conclusory allegations of fact or law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). A "motion for summary judgment may not be defeated ... by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249-50 (1986); *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006); *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("'[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.'") (quoting *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996)) (brackets in original)).

B.     Defendant's Arguments

Defendants seek summary judgment as to Plaintiff's First and Eighth Amendment claims on the grounds that: (1) no genuine issue of material fact shows that they retaliated against Plaintiff or used excessive force against him; (2) his claims are barred

7

by *Heck v. Humphrey*, 512 U.S. 477 (1994) and (3) they are entitled to qualified immunity. (*See* Defs." P&As at 11-23.)

C.     Plaintiff's Opposition

Plaintiff contends Defendants are not entitled to summary judgment because their Motion has "failed to meet their burden of demonstrating that there is no dispute as to any material fact, and because the facts set forth in Plaintiff's Separate Statement of Material Facts and the attached countervailing evidences show that Defendants' violated Plaintiff's clearly established constitutional rights." (Pl.'s Opp'n, ECF No. 95 at 20.)

D.     Eighth Amendment Excessive Force claims

In general, an Eighth Amendment violation occurs only when an inmate is subjected to the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Jeffers v. Gomez*, 267 F.3d 895, 900 (9th Cir. 2001). With respect to Plaintiff's claims that Defendants used excessive force against him, the "core judicial inquiry" is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (extending *Whitley*'s Eighth Amendment analysis from prison riots to "whenever guards use force to keep order."); *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010). In making this determination, courts consider factors such as: (1) extent of the injury, (2) need to use the force, (3) relationship between the need and the amount of force used, (4) the threat "reasonably perceived" by the officials, and (5) "any efforts made to temper the severity" of the force. *Hudson*, 503 U.S. at 7 (citations omitted).

Ultimately, however, Plaintiff must show more than "merely objectively unreasonable force," *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002), in order to prove that Defendants acted in bad faith with the intent to harm him. *Wilkins*, 559 U.S. at 37; *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 795 (9th Cir. 2018); *Hoard v. Hartman*, 904 F.3d 780, 790 (9th Cir. 2018); *Jeffers v. Gomez*, 267 F.3d 895, 912 (9th Cir. 2001) (affirming summary judgment on behalf of correctional officers because there

3:16-cv-2100-BTM-MSB

was an "absence of evidence showing that either officer acted purposely to injure" and the officers' actions did not suggest "malice or sadism or otherwise create an inference of impermissible motive.").

Defendants maintain that "Cuevas and Olivo simply protected themselves, and acted to ensure each other's safety, and the safety of other inmates on January 27, 2016, in compliance with CDCR's safety protocols and use-of-force policies." (Defs." P&As at 14.) The force at issue in this matter occurred after a physical altercation between Plaintiff and Cuevas. Cuevas attests that "Plaintiff swung his right fist towards the left side of [his] face, striking [him] in [his] lower lip and jaw area." (Cuevas Decl. at ¶ 2.) Plaintiff disputes that he struck Cuevas and instead maintains that Cuevas kicked his leg causing Plaintiff to "lose his balance and started falling back." (Pl.'s Decl. at 5.) Plaintiff attests that he "threw both of [his] hands out trying to catch a hold of [Cuevas]" so he would "not fall on [his] back to the asphalt." (*Id.*)

Following this incident, Olivo declares that he "immediately grabbed Plaintiff's upper torso area with both hands." (Olivo Decl. at ¶ 3.) He then "simultaneously swept Plaintiff's right leg with [his] leg, causing Plaintiff to fall to the ground." (*Id.*) Plaintiff does not dispute this set of facts. Plaintiff attests that Olivo "kick[ed] both of [his] legs from under Plaintiff." (Pl.'s Decl. at 5.) However, Plaintiff and Olivo present different facts as to what happened after Plaintiff fell to the ground. Olivo declares that "as Plaintiff was falling to the ground, Plaintiff spun around, broke from [his] grasp, and landed on his stomach." (Olivo Decl. at ¶ 3.) Olivo further attests that "Plaintiff attempted to hit [him] by swinging both fists at [his] torso" but Plaintiff "did not make contact." (*Id.*) Plaintiff, however, declares that he "fell on [his] back on to the asphalt knocking the air out of Plaintiff." (Pl.'s Decl. at 6.) Plaintiff then states that at some point, unnamed individuals "turn[ed] Plaintiff over onto Plaintiff's stomach." (*Id.*)

Cuevas maintains that Plaintiff was "on the ground, resisting Correctional Officer Olivo's order to comply by moving his arms around and kicking." (Cuevas Decl. at ¶ 4.) He declares that he "placed [his] right knee over Plaintiff's torso to control his

movement" and "went into a mount position by placing both of his legs over Plaintiff's lower back area." (*Id.* at ¶ 5.) Plaintiff's version of what happened at this point is virtually identical to Cuevas's representation. Plaintiff declares that after he was lying on the ground, Cuevas put his knee "in the lower part of Plaintiff's back" and then "mount[ed] Plaintiff by putting his full body weight on top of Plaintiff." (Pl.'s Decl. at 6.) He further claims as he was lying on the floor with Cuevas on top of him, Defendant Moya[1] "jab[ed] Plaintiff in the lower left side of Plaintiff's back." (*Id.*)

Cuevas declares he then "grabbed Plaintiff's left wrist and noticed Correctional Officer Olivo had control of Plaintiff's left hand." (Cuevas Decl. at ¶ 6.) Cuevas then "released Plaintiff's left wrist and took control of Plaintiff's right hand and pulled it towards the middle of his lower back." (*Id.*) Cuevas attests that he "retrieved [his] state-issued handcuffs and placed both of Plaintiff's wrists in restraints" and he then "stood up and walked away as Sergeant Moya maintained control of Plaintiff." (*Id.* at ¶¶ 6-7.)

Plaintiff, however, attests that Cuevas did not place handcuffs on his wrists immediately after he was on Plaintiff's back but instead "started to bend Plaintiff's fingers on Plaintiff's left hand backward in a maliciously and sadistically manner to try and break Plaintiff's fingers." (Pl.s Decl. at 7.) Plaintiff claims Defendant Moya told Defendant Mendoza to "escort Plaintiff to the facility "C" program office." (*Id.*)

### 1. Defendant Mendoza

As an initial matter, the Court finds that Defendant Mendoza is entitled to summary judgment as to Plaintiff's Eighth Amendment excessive force claims. In his deposition, Plaintiff testifies that he did not "see [Mendoza] use any force." (Defs.' P&As at 62-1, Ex. A, Pl.'s Depo. at 76:4-6.) Instead, Plaintiff admits the "only thing [Mendoza] did was he refused to give me my cane to walk to the program office." (*Id.* at 76:6-8.) Plaintiff raised this claim as an Eighth Amendment deliberate indifference to a

---

[1] Defendant Moya has not been served in this matter.

10

serious medical need claim in his Complaint rather than an Eighth Amendment excessive force claim. (*See* Pl.'s Compl. at 15.) On January 16, 2018, the Court granted Defendants' Motion for Partial Summary Judgment as to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim for failing to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a). (*See* Jan. 16, 2018 Order, ECF No. 29 at 16.)

Therefore, Defendant Mendoza's Motion for Summary Judgment as to Plaintiff's Eighth Amendment excessive force claim is GRANTED.

### 2. Remaining Defendants

#### a. Extent of Injury

The Supreme Court has made clear that the Eighth Amendment may be violated by the use of excessive force against a prison inmate "'[even] when the inmate does not suffer serious injury.'" *Wilkins*, 559 U.S. at 34 (2010) (quoting *Hudson*, 503 U.S. at 4). While the extent of an inmate's injury is relevant to the Eighth Amendment inquiry, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id*. at 38.

At the same time:

[N]ot "every malevolent touch by a prison guard gives rise to a federal cause of action." [*Hudson*,] 503 U.S. at 9[]. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Ibid. (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Ibid. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

*Wilkins*, 559 U.S. at 38; *Hudson*, 503 U.S. at 7-9; *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

Plaintiff maintains that he has "suffered a life lasting injury that cannot be classified as 'trivial.'" (Pl.'s Opp'n at 45.) Plaintiff claims to have a "mobility impairment" that he will "have to endure for the rest of [his] life" as a result of this

incident. (*Id.*) Defendants do not point to any evidence in the record to dispute Plaintiff's claims that he suffered more than de minimis injuries. This factor weighs in favor of Plaintiff.

### b. Need for Application of Force

It is undisputed that there was a physical altercation between Plaintiff and Cuevas prior to the use of force. While Plaintiff attempts to characterize this altercation as accidental, it is also undisputed that he was convicted of "Battery by Prisoner on Non-Prisoner" by a jury and sentenced to three years. (*See* Defs. P&As, Ex. B, Felony Abstract of Judgment dated Sept. 5, 2018.) These facts support a finding that the need for some use of force was necessary following the physical altercation between Plaintiff and Cuevas.

### c. Relationship Between Need for Force and Force Used

"Force does not amount to a constitutional violation . . . if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (quoting *Whitley*, 475 U.S. at 320-21). Here, neither party disputes that Olivo used his legs to cause Plaintiff to fall to the ground. (*See* Olivo Decl. at ¶ 3; Pl.'s Compl. at 14.) However, Plaintiff does not provide any evidence or point to any evidence in the record that would demonstrate that Olivo's actions were anything other than an attempt to restore discipline following the physical altercation between Plaintiff and Cuevas. Thus, the Court finds that Plaintiff fails to demonstrate that Olivo had malicious or sadistic intent when he used force against Plaintiff. *See Furnace v. Sullivan*, 705 F.3d 1021, 1029 n. 4 (9th Cir. 2013) (noting the "spontaneous use of force can be necessary . . . in response to a [reasonably] perceived danger or threat.").

However, as to Cuevas, Plaintiff claims that he was "on [his] stomach in a prone position when [Cuevas] came over" and "put all his 230 pounds on top of Plaintiff and began to try and break Plaintiff's fingers." (Pl.'s Opp'n at 47.) Cuevas alleges that he

only grabbed Plaintiff's hand in order to place him in wrist restraints. (*See* Cuevas Decl. at ¶ 6.)

While a reasonable jury could conclude that Cuevas's claim that the amount of force he used was appropriately tempered and only the amount necessary under the circumstances for him to maintain or restore discipline, see *Hudson*, 503 U.S. at 7, they could also reasonably find, based on Plaintiff's allegations regarding the incident, that Cuevas acted "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6.

Accordingly, while this factor weighs in favor of Defendant Olivo but there is a material dispute as to whether Cuevas used the appropriate amount of force and whether his use of force rose the level of being malicious or sadistic.

### d. Threat Perceived by Defendants

As stated previously, there is no dispute that there was a physical altercation between Plaintiff and Cuevas that initiated the series of events that are alleged in this action. While Plaintiff claims that he accidentally came into contact with Cuevas, he was convicted of battery on Cuevas by a jury. So as to the initial response by Oliva to take Plaintiff to the ground, this action can be viewed as a reasonable response that was necessary because Plaintiff arguably presented a real security risk. However, there is a dispute as to whether Plaintiff complied with commands after he was on the ground and whether the use of force after Plaintiff was prone on the ground was excessive. Defendants maintain Plaintiff was "being combative and resisting Olivo's order to comply by moving his arms around and kicking." (Defs. Sep. Stmt. Undisp. Facts, No. 11 citing Cuevas Decl. at ¶4; Olivo Decl. at ¶ 4.) Plaintiff, on the other hand, claims he was in a "non threatening position on my stomach prone position." (Pl.'s Sep. Stmt. Undisp. Facts, No. 33.)

The Court may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another. *Wall v. County of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004) ("By deciding to rely on the defendants' statement of fact [in deciding a

summary judgment motion], the district court became a jury."); *see also Smith v. City of Hemet*, 396 F.3d 689, 701 (9th Cir. 2005) ("Because [the excessive force inquiry] nearly always requires a jury to sift through factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

    e.  Attempts to Temper the Severity of the Force

   Plaintiff argues that force used by Defendants was excessive and they "decided to prolong and therefore, increase the severity of the force." (Pl.'s Opp'n at 53.) Defendants maintain that the Plaintiff provoked the entire incident and continued to refuse to comply with their orders which required the amount of force that was used. (Cuevas Decl. at ¶ 5.) The allegations regarding the purported prolonging use of force involve the allegations against Cuevas. In his Opposition, Plaintiff argues that the force used by Cuevas after Plaintiff was lying prone on the ground demonstrates that Cuevas did nothing to temper the severity of the force used. (Pl.'s Opp'n at 53.) Plaintiff does not allege or argue that Olivo used any force after he purportedly was lying prone on the floor.

   Therefore, as to the alleged actions taken by Cuevas, the Court finds that there is a disputed fact as to whether Cuevas tempered his response when using force but there is no disputed fact as to Olivo.

    f.  Conclusion

   Plaintiff fails to raise a triable issue of material fact as to whether Olivo used "malicious and sadistic force" against him in violation of the Eighth Amendment. *Clement*, 298 F.3d at 903. Moreover, in analyzing Plaintiff's claims under the *Hudson* factors, the Court finds that most of these factors weigh heavily in favor of Olivo. Accordingly, the Court GRANTS Defendant Olivo's Motion for Summary Judgment as to Plaintiff's Eighth Amendment excessive force claims. However, the Court finds that the *Hudson* factors as to the claims against Cuevas weigh heavily in favor of Plaintiff.

Therefore, the Court finds that there is a triable issue of material fact as to Plaintiff's Eighth Amendment excessive force claims against Defendant Cuevas and his Motion is DENIED.

###     E.     Retaliation Claim

Defendants' seek summary judgment as to Plaintiff's First Amendment retaliation claim. (*See* Defs.' P&As at 15-16.) A retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Plaintiff must allege that the retaliated-against conduct is protected. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).[2] Second, Plaintiff must allege Defendants took adverse action against him.[3] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Third, Plaintiff must allege a causal connection between the adverse action and the protected conduct.[4] *Watison*, 668 F.3d at 1114. Fourth, Plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).[5] Fifth, Plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15.

/ / /

/ / /

/ / /

---

[2] The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

[3] The adverse action need not be an independent constitutional violation. *Pratt*, 65 F.3d at 806. "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270.

[4] Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *Watison,* 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")).

[5] "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11.

In his Complaint, Plaintiff alleges Defendants retaliated against him because he was engaged in litigation "against institutional head of [CSP]" for violating his First Amendment rights for "redress petition of grievance against prison officials" in the Eastern District of California in November of 2015. (Compl. at 16.) Plaintiff alleges that the actions of Cuevas in January of 2016 were in retaliation for Plaintiff filing the previous lawsuit in 2015. (*See id.*)

Defendants argue that they "never retaliated against Plaintiff for his exercise of free speech" and they had "no knowledge that Plaintiff was suing the warden or any other staff member of the California Department of Corrections and Rehabilitation." (Defs.' P&As at 16; Defs.' Sep. Stmt. Undisp. Facts No. 39 citing Cuevas Decl. at ¶ 12; Olivo Decl. at ¶ 10; Mendoza Decl. ¶ 8.) Plaintiff points to no evidence in the record to support his claim that Defendants were aware that he was engaged in litigation. However, he does state that prior to the incident involving force, he attempted to address an issue with Cuevas regarding Plaintiff's concern with Cuevas's interaction with a younger inmate. (*See* Pl. Decl. at 4.) Plaintiff maintains that Cuevas was disrespectful towards him and when he protested, Cuevas responded "what are you going to do about it, you only write stuff up." (*Id.*) Cuevas then purportedly called Plaintiff an "[expletive] S Building snitch." (*Id.*) Plaintiff also claims that he had previously filed grievances against Cuevas. (*Id.* at 3-4.)

Plaintiff must show the causal connection between the adverse action and the protected conduct. *Watison*, 668 F.3d at 1114. At the summary judgment stage, Plaintiff must offer "either direct evidence of retaliatory motive" or circumstantial evidence of Defendants' purported retaliatory motive. *McCullum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)). In this matter, Plaintiff offers neither direct or circumstantial evidence of Defendants Olivo or Mendoza's alleged retaliatory motive. However, Plaintiff does attest, through his verified Declaration, that he had filed a grievance against Cuevas prior

to the use of force incident and Cuevas told Plaintiff that he was aware that Plaintiff had written grievances against prison officials.

Therefore, the Court GRANTS Defendant Olivo and Mendoza's Motion for Summary Judgment but DENIES Defendant Cueva's Motion for Summary Judgment as to Plaintiff's retaliation claim.

### E. Heck Bar

Defendants argue that both Plaintiff's excessive force claims and his retaliation claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994

In *Heck,* the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id*. at 486-87.

"Suits challenging the validity of the prisoner's continued incarceration lie within 'the heart of habeas corpus,' whereas 'a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody.'" *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003), *quoting Preiser v. Rodriguez*, 411 U.S. 475, 489-99 (1973) (holding that a writ of habeas corpus is "explicitly and historically designed" to provide a state prisoner with the "exclusive" means to "attack the validity of his confinement" in federal court).

In support of their argument, Defendants argue that a jury found that Plaintiff had "battered Cuevas" and the "use of force to restrain Plaintiff was reasonable and

necessary." (Defs.' P&As at 19.) It is undisputed that "Plaintiff was criminally charged with battery by a prisoner on a non-prisoner under California Penal Code section 4501.5." (Defs. Sep. Stmnt. Undisp. Facts No. 42.) Plaintiff was found guilty in 2018 in Imperial County Superior Court and a three-year sentence was imposed. (*Id.* No. 43; Defs.' P&As, Ex. B. Felony Abstract of Judgment dated Sept. 5, 2018.) Defendants argue that Plaintiff's excessive force claims are *Heck* barred because his criminal conviction arose "out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 claims are sought, the 1983 action must be dismissed." (*Id.* at 19 citing *Cunningham v. Gates,* 312 F.3d 1148, 1153 (9th Cir. 2002) (quoting *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996)).)

However, Plaintiff is not barred from bringing this action by *Heck* "if the use of excessive force occurred *subsequent* to the conduct on which his conviction was based." *Smith v. City of Hemet*, 394 F.3d 689, 698 (9th Cir. 2005). Here, the evidence supplied by Defendants does not make clear whether Plaintiff's criminal conviction of battery on Cuevas was based on the initial interaction or the interaction that followed when Plaintiff was taken to the ground by Olivo. If Plaintiff were to prevail in this action, it is not at all clear that it would invalidate his conviction of battery on Cuevas. Even if Plaintiff did commit a battery, that does not exclude the possibility that the force used in response to this battery was excessive. *Id.*

Defendants cite to a recent unpublished Ninth Circuit opinion in which it was held that a plaintiff's First Amendment retaliation claim was barred by *Heck* to support their argument that Plaintiff's retaliation claim is similarly barred. (*See* Defs.' P&As at 20 citing *Moschref v. Stratton*, 697 Fed.Appx. 532 (9th Cir. 2017). In *Moschref*, the Ninth Circuit did find that the plaintiff's retaliation claim was barred by *Heck*. *Id.* However, while the facts in this unpublished opinion are not fully set forth, it appears that the plaintiff in that matter was claiming that the officer who arrested him had made retaliatory false statements that led to his conviction. *Id.* Thus, the Ninth Circuit found that the plaintiff's claims of false statements would imply the invalidity of his conviction

that was based on those purportedly false statements. *Id.* In the matter before this Court, Plaintiff alleges that the amount of force used was excessive and it was used in retaliation for grievances he had previously filed against Cuevas. The facts in *Moschref* are not at all in line with the allegations in the matter before this Court.

Defendants also cite to another unpublished Ninth Circuit opinion in which the Ninth Circuit stated "[w]e pause to note that consideration of [plaintiff's] First Amendment claim is likely barred by [*Heck*] because prevailing on her claim would imply the invalidity of her criminal convictions arising from the same events." (Defs.' P&As at 20 citing *Smith v. Ball*, 278 Fed.Appx. 739, 741.)

It is undisputed that Plaintiff was convicted of battery. However, if he were to prevail on his retaliation claim there are no facts to show that it would imply the invalidity of his conviction. Plaintiff's claim for retaliation does not arise from the event for which he was convicted of battery, it relates to the alleged excessive force purportedly used in retaliation *after* the battery that is at issue in this matter.

Accordingly, Defendants Motion for Summary Judgment based on *Heck* grounds is DENIED.

## V.    Qualified Immunity

Finally, Defendants move for summary judgment as to Plaintiff's excessive force claims on the ground that they are entitled to qualified immunity. (*See* Defs. P&As at 22-24.) Because the Court has found that Defendants Olivo and Mendoza are entitled to summary judgment as to all of Plaintiff's claims, it need not reach any issues regarding qualified immunity as to these Defendants. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

However, the Court will determine whether Defendant Cuevas is entitled to qualified immunity as to Plaintiff's Eighth Amendment excessive force claims.

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Although *Saucier* originally required the Court to answer these questions in order, the U.S. Supreme Court has since held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

If the Court finds that Plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Similarly, if the Court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity without determining whether the allegations in fact make out a statutory or constitutional violation. *Pearson*, 555 U.S. at 236-37.

As noted above, genuine disputes of material fact exist as to whether Defendant Cuevas violated Plaintiff's Eighth Amendment rights. If Plaintiff's claims are presumed true, this evidence could establish that Plaintiff was non-resistant, laying prone, and posing no discernible threat to Cuevas, and that therefore, Cuevas' actions were "unnecessary" and "wanton." *See Jeffers*, 267 F.3d at 907 (citing *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998)). Thus, "the next . . . step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.

A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. However, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons,* __ U.S. __, 139 S.Ct. 500, 503 (2019). "Qualified immunity

attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kinsela v. Hughes*, 584 U.S. __, 138 S.Ct. 1148, 1152 (2018).

The Ninth Circuit has specifically noted that "a prison guard's use of excessive force was clearly established" by 1992 when the Supreme Court held that the "settled rule [is] that 'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Martinez*, 323 F.3d at 1184 (quoting *Hudson*, 503 U.S. at 5). Indeed, *Hudson* itself held unconstitutional the unjustified use of physical force upon a non-resistant prisoner. *See Hudson*, 503 U.S. at 7-10 (holding that guards violated Hudson's Eighth Amendment rights when they gratuitously punched and hit him, causing only minor injuries, while escorting him between prison facilities); *see also Martinez*, 323 F.3d at 1184 (finding qualified immunity improperly granted to officers who allegedly beat an inmate during a cell extraction, despite his lack of resistance); *McRorie v. Shimoda*, 795 F.3d 780, 784 (9th Cir. 1986) (finding Eighth Amendment violation when prisoner was assaulted while not resisting). Here, there are triable issues of fact as to whether the amount of force used by Cuevas after Plaintiff was laying prone on the ground was excessive.

Accordingly, viewing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff has sufficiently produced evidence to satisfy both prongs of the qualified immunity analysis as to Defendant Cuevas. Therefore, Defendant Cuevas' Motion for Summary Judgment on qualified immunity grounds is DENIED.

## VI. Order to Show Cause why Defendant Moya should not be dismissed

A review of the Clerk's docket indicates that Defendant Moya has not been served in this action. *See Walker v. Sumner*, 14 F.3d 1415, 1421-22 (9th Cir. 1994) (where a pro se plaintiff fails to provide the Marshal with sufficient information to effect service, the court's sua sponte dismissal of those unserved defendants is appropriate under Fed.R.Civ.P. 4(m)). According to the summons returned to the Court on May 3, 2017, the litigation coordinator at CAL would not accept service on Moya's behalf because he

had retired. (ECF No. 15.) In the more than two years since the summons was returned unexecuted, Plaintiff has not sought an extension of time to properly serve Moya.

Accordingly, this Court ORDERS Plaintiff to show cause no later than thirty days (30) after this Order is filed, why the claims against this Defendant should not be dismissed for want of prosecution pursuant to Fed.R.Civ.P. 4(m). If Plaintiff wishes to proceed with his claims against Defendant Moya he must provide the Court with proof of proper service within thirty (30) days from the date this Order is filed or a valid excuse for not taking further efforts to effect service. Otherwise, Defendant Moya will be dismissed from this action without prejudice.

## V.  Conclusion and Order

In light of the above, the Court;

(1)  **GRANTS** Defendants Olivo and Mendoza's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a) as to Plaintiff's Eighth Amendment excessive force claims;

(2)  **DENIES** Defendant Cuevas' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a) as to Plaintiff's Eighth Amendment excessive force claims;

(3)  **GRANTS** Defendants Olivo and Mendoza's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a) as to Plaintiff's First Amendment retaliation claims;

(4)  **DENIES** Defendant Cuevas' Motion for Summary Judgment pursuant to Fed. R.Civ.P. 56(a) as to Plaintiff's First Amendment retaliation claims;

(5)  **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment excessive force and First Amendment retaliation claims as barred by *Heck*;

(6)  **DENIES** Defendant Cuevas' Motion for Summary Judgment as to Plaintiff's Eighth Amendment excessive force claims on qualified immunity grounds.

/ / /

/ / /

3:16-cv-2100-BTM-MSB

/ / /

It is further ordered that:

(7)     Plaintiff must show cause no later than thirty (30) days from the date this Order is filed why the claims against Defendant Moya should not be dismissed for want of prosecution pursuant to Fed.R.Civ.P. 4(m).

If Plaintiff fails to provide the Court with documentation demonstrating proper service on this Defendant within thirty (30) days from the date this Order is filed or a valid excuse for not taking further efforts to effect service, the claims against him in this action will be dismissed without prejudice.

**IT IS SO ORDERED**.

Dated: October 3, 2019

_____
Hon. Barry Ted. Moskowitz
United States District Judge